IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE JAMES EZELL,               : | Bankr. No. 25-11210 (BLS) |
|                Debtor.       : | Civ. No. 25-1158 (GBW) |
|                     : | (Lead) |

IN RE JAMES EZELL,

            Debtor.

> :    Bankr. No. 25-11210 (BLS)
> :    Civ. No. 25-1158 (GBW)
> :    (Lead)

IN RE WMI LIQUIDATING TRUST,

            Alleged Involuntary Debtor.

> :    Bankr. No. 25-11209 (BLS)
> :    Civ. No. 25-1163 (GBW)
> :    (Consolidated)

JAMES EZELL,

            Appellant,

     v.

JP MORGAN CHASE BANK N.A., *et al.*,

            Appellees.

> :    Bankr. No. 25-11209 (BLS)
> :    Adv. No. 25-51041 (BLS)
> :    Civ. No. 25-1164 (GBW)
> :    (Consolidated)

---

## MEMORANDUM

*Pro se* appellant James Ezell ("Appellant") has filed the above-captioned three appeals and numerous additional motions for relief in connection with his long history of bankruptcy filings seeking to forestall foreclosure on rental property that he owns in Ashbury Park, New Jersey (the "Property"). Millenium Trust Company, LLC asserts that it is the current holder of the Note and Mortgage relating to the Property. (Bankr. 25-11210-BLS, D.I. 36.) Appellant asserts that Washington Mutual, Inc. ("WMI") is the prior holder of the Note and Mortgage and that his mortgage obligations were somehow "discharged" pursuant to WMI's chapter 11 plan of reorganization (the "WMI Plan"), which was confirmed by the Bankruptcy Court on February 23, 2012, more than fourteen years ago.

Relevant here, Appellant has appealed three Bankruptcy Court orders dismissing three separate proceedings, each of which Appellant commenced on procedurally and substantively improper grounds, based on his misreading of the WMI Plan and his misapprehension of

1

bankruptcy law.  After considering and ruling on numerous duplicative emergency motions filed in these appeals (*see* D.I. 11), this Court issued an order on October 8, 2025, which (1) consolidated the appeals under Civ. No. 25-1158 (GBW)[1] (the "Consolidated Appeal"), (2) set a briefing schedule on the merits, and (3) provided that "[a]ny filings other than briefing on the merits shall be docketed but may not be considered by the Court" (D.I. 12) (the "Scheduling Order").  On November 6, 2026, Appellant filed his opening brief in support of his appeal.  (D.I. 13.)  The docket reflects that no answering brief was filed.  This Memorandum addresses the merits of the issues raised in the Consolidated Appeal.

## I.    BACKGROUND

### A.    The Purported Involuntary Petition (Case No. 25-11209 (BLS))

On June 24, 2025, Appellant filed a purported involuntary chapter 7 petition (Bankr. D.I. 1) against the trust (the "WMI Liquidating Trust") created pursuant to the WMI Plan.  The petition was incorrect and deficient in several aspects.  (*See* Bankr. D.I. 1, 2.)

On June 25, 2025, the Bankruptcy Court issued an order setting a status conference on the case for July 16, 2025, requiring Appellant, as petitioning creditor, to attend in person, and advising that failure to appear may result in the dismissal of the chapter 7 case.  (Bankr. D.I. 5.)  On July 2, 2025, Appellant filed a request for accommodations under the Americans With Disabilities Act ("ADA") (Bankr. D.I. 8; D.I. 4-8) (the "ADA Request") due to his "diagnosed conditions of anxiety and dyslexia."  (*Id.* at 1)  A hearing on the ADA Request was scheduled for July 31, 2025.  (Bankr. D.I. 9.)  Prior to the hearing on the ADA Request, however, the Bankruptcy Court issued an order on July 24, 2025 dismissing the involuntary case (Bankr. D.I. 11) (the "WMI Dismissal Order").

On July 28, 2025, Appellant filed a motion for reconsideration of the WMI Dismissal Order (Bankr. D.I. 13).  On August 21, 2025, the Bankruptcy Court held a hearing on the motion for

---

[1] The docket of the Consolidated Appeal is cited herein as "D.I. __."

reconsideration and other matters discussed below (the "August 21 Hearing"). Appellant attended the August 21 Hearing (Bankr. D.I. 20), and presented evidence and argument. The Bankruptcy Court's subsequent letter ruling (Bankr. D.I. 21) (the "Letter Ruling") denied reconsideration, explaining, *inter alia*, that (i) the involuntary petition did not meet "any of the material requirements set forth in 11 U.S.C. § 303(b) to commence an involuntary case"; (ii) the putative debtor—the WMI Liquidating Trust—ceased to exist in 2019; and (iii) even if there were actions taken or rulings given in WMI's bankruptcy case, there is no basis alleged for any relief that could be obtained through the involuntary petition against the WMI Liquidating Trust. (*See id.* at 3.) "More specifically," the Bankruptcy Court explained, "Mr. Ezell believes that certain orders from the *Washington Mutual* case protect or insulate the Property from foreclosure (or stripped creditors of the right to pursue remedies against the Property). Even if that is the case, it is not necessary or appropriate to commence an involuntary proceeding to obtain the benefit of such orders (if any)." (*Id.*) "There is no purpose to be served by putting the putative debtor into an insolvency proceeding." (*Id.*) Accordingly, on September 4, 2025, the Bankruptcy Court issued its order denying reconsideration of the WMI Dismissal Order. (Bankr. D.I. 23.) On September 16, 2025, Appellant appealed the WMI Dismissal Order. (Civ. No. 25-1163-GBW, D.I. 1.)

**B.      Appellant's Voluntary Chapter 7 Case (Bankr. No. 25-11210 (BLS))**

On June 24, 2025—the same day Appellant filed the purported involuntary petition against the WMI Liquidating Trust—Appellant also filed a voluntary petition for relief on his own behalf under chapter 7 of the Bankruptcy Code. Again, the petition was deficient in many respects. (*See* Bankr. D.I. 1, 2, 4, 5.) On June 25, 2025, the Bankruptcy Court issued an order setting a status conference on the case for July 16, 2025, requiring Appellant to attend in person, and advising that failure to appear may result in the dismissal of the chapter 7 case. (Bankr. D.I. 7.) On July 23,

2025, the Bankruptcy Court issued an order dismissing the case (Bankr. D.I. 20) (the "Ezell Dismissal Order.")

On July 28, 2025, Appellant filed a motion for reconsideration of the Ezell Dismissal Order (Bankr. D.I. 23), which was also scheduled for hearing on August 21, 2025. (Bankr. D.I. 31.) At the August 21 hearing, the Bankruptcy Court received into evidence numerous documents from Appellant and heard his presentation on the lengthy history of the dispute relating to the Property and his desire for legal relief. The Letter Ruling (Bankr. D.I. 32) explains that Appellant does not have any connection to Delaware, as the Property is located in New Jersey and because Appellant advised the Bankruptcy Court that he is a long time resident of Alabama. (*Id.* at 2). The Bankruptcy Court noted that Appellant filed a chapter 13 case in Alabama nearly a decade ago for the same purpose—forestalling foreclosure on his Property. (*See id.* at n.7; *see also In re Ezell*, Case No. 16-4389 (JCO), Docket No. 214 (Bankr. S.D. Ala. 2019) (Opinion dated June 5, 2019 granting relief from automatic stay to permit mortgage creditor to pursue remedies against the Property in New Jersey state court and noting (years ago) that the dispute already had "a long and tortured history with this Court, and the same appears to be true with other state and federal courts in New Jersey"). Accordingly, on September 4, 2025, the Bankruptcy Court issued an order denying reconsideration of the Ezell Dismissal Order. (Bankr. D.I. 33.)

On September 16, 2025, Appellant filed a notice of appeal with respect to the Ezell Dismissal Order. (Civ. No. 25-1158-GBW, D.I. 1.)

### C.    The Adversary Proceeding (Adv. No. 25-51041 (BLS))

On June 24, 2025—the same day Appellant filed his chapter 7 petition and the purported involuntary petition against WMI Liquidating Trust—Appellant also filed a complaint initiating an adversary proceeding against JP Morgan Chase Bank N.A. and various other creditor parties ("Defendants") in the involuntary proceeding, apparently seeking declaratory and injunctive relief

4

to prevent the exercise of creditor remedies against the Property.  (Adv. D.I. 1.)  On July 24, 2025, the Bankruptcy Court issued an order dismissing the adversary proceeding (Adv. D.I. 9) (the "Adversary Dismissal Order," and together with the WMI Dismissal Order and the Ezell Dismissal Order, the "Dismissal Orders").

On July 28, 2025, Appellant filed a motion for reconsideration of the Adversary Dismissal Order.  (Adv. D.I. 11.)  Appellant's motion for reconsideration was also heard at the August 21 Hearing (Adv. D.I. 16), which Appellant attended and presented argument.  The Letter Ruling (Adv. D.I. 17) explains, *inter alia*, that (i) the adversary proceeding was filed under the involuntary petition, which has been dismissed; and (ii) "since neither the Property nor Mr. Ezell are in Delaware it does not appear that this Court has the authority to grant any relief in the adversary proceeding."  (Adv. D.I. 17 at 3.)  Accordingly, on September 4, 2025, the Bankruptcy Court issued an order denying Appellant's motion for reconsideration of the Adversary Dismissal Order.  (Bankr. D.I. 18.)  On September 16, 2025, Appellant appealed the Adversary Dismissal Order.  (Civ. No. 25-1164-GBW, D.I. 1.)

## II.    JURISDICTION

The Court has jurisdiction to hear an appeal from a final order of the Bankruptcy Court pursuant to 28 U.S.C. § 158(a)(1).  An order dismissing a chapter 7 case is a final order.  *See In re Taylor*, 913 F.2d 102, 104 (3d Cir. 1990) (order is final and immediately appealable if it "fully and finally resolved a discrete set of issues, leaving no related issues for later determination").  An order dismissing an adversary proceeding is also a final order.  *In re Arctic Glacier Int'l, Inc.*, 255 F. Supp. 3d 534, 545 (D. Del. 2017), *aff'd*, 901 F.3d 162 (3d Cir. 2018), *as amended* (Oct. 24, 2018); *In re Target Indus., Inc.*, 386 Fed. App'x 233, 235 n.1 (3d Cir. 2010) (order dismissing adversary proceeding claims constituted final order).  This Court "review[s] the bankruptcy court's legal determinations *de novo,* its factual findings for clear error and its exercise of discretion for abuse

5

thereof." *See In re Trans World Airlines, Inc.*, 145 F.3d 124, 130 (3d Cir. 1998). "[Appellant] proceeds *pro se*, and accordingly, we construe his pleadings liberally." *See Laughlin v. Peck*, 552 Fed. App'x 188, 190 (3d Cir. 2014) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)).

## III.    DISCUSSION

Appellant's opening brief lists five issues on appeal, which, while not entirely clear, the Court construes as follows: (1) whether the Dismissal Orders were improperly entered "without notice or the ADA interactive process," Bankruptcy Rule 1017, and section 707(a) of the Bankruptcy Code; (2) whether the Dismissal Orders and Letter Ruling contravene sections 1141 and 524 of the Bankruptcy Code by disregarding the WMI Plan and discharge; (3) whether the Bankruptcy Court failed to issue findings of fact and conclusions of law under Bankruptcy Rule 7052; (4) whether the Bankruptcy Court erred by mischaracterizing Appellant's Rule 60(b)(4) motion as a motion for reconsideration and by applying the wrong legal standard; and (5) whether the "no Delaware connection" rationale "conflicts" with 28 U.S.C. § 1334(e)(1). (*See* D.I. 13 at 2.)

### A.    Appellant's Procedural Arguments Fail

The arguments raised on appeal are largely procedural and do not support the reversal of any of the Dismissal Orders nor do they entitle Appellant to relief.

Appellant faults the Bankruptcy Court for issuing any of the Dismissal Orders on July 24, 2025 prior to a hearing, and prior to a hearing on his ADA Request, which had been scheduled for hearing on July 31, 2025. As an initial matter, the Bankruptcy Court was not required to hold a hearing in order to dismiss Appellant's improperly filed chapter 7 case, his improperly filed involuntary case, or his improperly filed adversary proceeding. "A bankruptcy court as a court of equity has the inherent power to dismiss a case when its jurisdiction has been improperly invoked." *In re Conf. of Afr. Union First Colored Methodist Protestant Church*, 184 B.R. 207, 222 (Bankr. D. Del. 1995). And "under its inherent power the Court may act sua sponte to dismiss, independently

6

of the grounds specified in either § 305[a] or § 1112[b] of the Code." *In re Century City, Inc.*, 8 B.R. 25, 29 (D.N.J. 1980) (collecting cases). Section 105(a) of the Bankruptcy Code provides, in relevant part, that "[n]o provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." 11 U.S.C. § 105(a). Thus, "the fact that section 1112(b) requires a party or trustee to request dismissal or conversion does not preclude bankruptcy courts from evaluating a Chapter 11 petition and, on its own initiative, dismissing ... that petition for cause." *In re Conf. of Afr. Union*, 184 B.R. at 223 (collecting cases). "For purposes of exercising the power authorized by Code § 105(a), it makes no difference whether it is a Chapter 11 case or a Chapter 7 case." *Id.*

Moreover, although not required, the Bankruptcy Court *did* hold a hearing. The record reflects that, upon Appellant's various motions for reconsideration of the Dismissal Orders, the Bankruptcy Court issued a notice on July 29, 2025 scheduling the August 21 Hearing to consider Appellant's various motions for reconsideration. (*See* Bankr. No. 25-11209-BLS, D.I. 14; Bankr. No. 25-11210-BLS, D.I. 24). Appellant therefore had several weeks' notice of the August 21 Hearing. The record further reflects that Appellant attended the August 21 hearing, presented argument and evidence, and received a detailed Letter Ruling explaining why each proceeding had been dismissed. The Letter Ruling sets out why each of the three bankruptcy proceedings initiated by the Appellant was improperly filed and/or would achieve no bankruptcy law objective. The Letter Ruling explains that (1) Appellant's own chapter 7 petition, which was deficient in many respects, set forth no basis to have commenced a bankruptcy case in Delaware; (2) the involuntary petition against the WMI Liquidating Trust, a purported debtor which is no longer in existence, met none of the requirements of § 303(b) to commence an involuntary proceeding, and that Appellant had alleged "no basis ... for any relief that could be obtained through the Involuntary Petition"; and

7

(3) accordingly, the adversary proceeding filed in the involuntary case also could not proceed. Having dismissed those proceedings entirely, there was no need to hold a hearing on the ADA Request.

Appellant further argues that the Bankruptcy Court failed to issue a "written opinion" that contained findings of fact and conclusions of law. (*See* D.I. 13 at 3.) According to Appellant, Bankruptcy Rule 7052 "requires findings of fact and conclusions of law after bench determinations" and the Letter Ruling contained nothing "to support the adversary dismissal or to reject §§ 1141/524 defenses." (*Id.*) Federal Rule of Civil Procedure 52 (made applicable to adversary proceedings pursuant to Bankruptcy Rule 7052) "requires a court to make separate findings of fact and conclusions of law in rendering its judgment so as, among other reasons, to afford an appellate court an opportunity to understand the lower court's legal and factual basis for its ruling." 10 Collier on Bankruptcy ¶ 7052.01 (16th ed. 2026). The Bankruptcy Court entered no "judgment" in any these proceedings, however; rather, the Bankruptcy Court dismissed the proceedings as having been improperly filed. The findings and conclusions set forth in the Letter Ruling provide ample support for those dismissals.

Appellant further asserts that the Bankruptcy Court's rulings fail to appreciate that he sought relief under Federal Rule of Civil Procedure 60(b)(4) because the Dismissal Orders "were entered without due process and contrary to the Bankruptcy Code's injunction framework" and were therefore "void." (*See* D.I. 13 at 3.) *See* Fed. R. Bankr. P. 9024 (providing that, with limited exceptions, Federal Rule of Civil Procedure 60 applies in cases under the Bankruptcy Code); Fed. R. Civ. P. 60 (providing that "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding" where "the judgment is void.") According to Appellant, the Bankruptcy Court's "reliance on reconsideration ignores that void judgments must be vacated when jurisdiction or due process is lacking." (*Id.*) Appellant's motions

8

for reconsideration failed to establish any valid reason why the Dismissal Orders should be deemed void under Federal Rule of Civil Procedure 60(b)(4). The Letter Ruling thoroughly explained the basis for dismissing each of the improperly filed proceedings, and noted Appellant's failure to demonstrate any remaining grounds for relief under Rule 60: "there has been no change in controlling law since the dismissal of the Proceedings," "no suggestion that new evidence has arisen, or that relief would be appropriate to correct a clear error of law," nor would "dismissal of the Proceedings ... result in manifest injustice." (Letter Ruling at 3.) Appellant has failed to establish that any improper standard was applied by the Bankruptcy Court in its thorough Letter Ruling.

### B.    Appellant's Substantive Arguments Also Fail

Appellant's many filings in this Court and the Bankruptcy Court are based on his belief that his "mortgage debt was discharged by law in the [WMI] bankruptcy and subsequently transferred through a series of assignments that are void *ab initio* ... in brazen violation of the automatic stay (11 U.S.C. § 362) and the permanent discharge injunction (11 U.S.C. § 1141) stemming from the WMI bankruptcy." (*See* D.I. 4 at 2.) Appellant complains on appeal that the Letter Ruling did not analyze the authorities he cited in support of this argument. (*See* D.I. 13 at 2.) In support, Appellant cites several cases by name but without citation:

> Travelers holds confirmation/discharge orders are final and binding, even if arguably wrong. Celotex requires parties to obey bankruptcy injunctions unless modified by the issuing court. Taggart authorizes contempt where there is no fair ground of doubt.

(D.I. 13 at 3.) *See  Travelers Indemn. Co. v. Bailey*, 557 U.S. 137 (2009); *Celotex Corp. v. Edwards*, 514 U.S. 300 (1995); *Taggart v. Lorenzen*, 587 U.S. 554 (2019). Appellant also cites Bankruptcy Code sections 1141 (generally discharging the debtor from any debt that arose before the date of confirmation of the plan) and 524 (generally providing that a discharge granted to a debtor operates as an injunction). Appellant cites these cases and statutes in support of his position

9

that the WMI plan discharged "pre-confirmation debts"—which he apparently believes to include *his own indebtedness* under the Note and Mortgage, then held by WMI and later assigned to other parties. (*See* D.I. 13 at 3.)

This is a misstatement of law, and the cases and statutes cited by Appellant do not advance his cause. In support of his prior emergency motions, Appellant attached the WMI Plan but pointed to no provision that relieved him of his debt obligations under the Note and Mortgage. (D.I. 4-3.) Appellant's opening brief similarly fails to cite any plan provision. Appellant also cites an August 22, 2024 Bankruptcy Court order, issued by the bankruptcy judge that presided over WMI's chapter 11 cases, that, in his view, confirms that his Note and Mortgage were "discharged" (D.I. 6-3) (the "August 2024 Order.") Appellant's reliance on the August 2024 Order is misplaced. The August 2024 Order, issued in connection with Appellant's motion to reopen WMI's chapter 11 cases, denies the motion because "reopening this case would be futile given that [Appellant's] underlying request for relief is unavailable." (*Id.*) Among other things, the August 2024 Order explains, "any and all claims arising from the note and mortgage executed March 18, 2003, that the *Appellant may have against Washington Mutual, Inc.* … or its successors has been discharged in accordance with the confirmation order entered on February 24, 2012." (*Id.* at ¶ 1.) This statement is consistent with the ordinary discharge of claims against a debtor pursuant to a confirmed chapter 11 plan. The August 2024 Order does not relieve Appellant of his debt obligations under the Note and Mortgage, nor does it evidence that the confirmed WMI Plan somehow relieved Appellant from those obligations.

Although not entirely clear, Appellant also appears to argue that "enforcement and interpretation" of the WMI plan and orders is within the jurisdiction of the Bankruptcy Court, and are not matters to be resolved "via collateral state actions." (*See* D.I. 13 at 4.) Indeed, the Bankruptcy Court retains jurisdiction to enforce its prior orders, including the order confirming the

10

WMI Plan and the discharge. To that end, the Bankruptcy Court has denied Appellant's attempts to reopen WMI's chapter 11 cases because the WMI Plan does not support the relief Appellant seeks. (*See* D.I. 6-4.) Even if it did, as the Letter Ruling clearly explains, "it is not necessary or appropriate to commence an involuntary proceeding [against the WMI Liquidating Trust] to obtain the benefit of such orders (if any)," as "no purpose would be served by putting the putative debtor into an insolvency proceeding." (Letter Ruling at 3.) Appellant does not explain why this ruling is incorrect or what purpose would be served. The Court finds no error in the Bankruptcy Court's reasoning and no basis to disturb the Dismissal Orders.

## IV. CONCLUSION

For the reasons set forth herein, the Dismissal Orders will be affirmed. A separate order shall follow.

THE HONORABLE GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE